**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| ADAM SAUL FUTO and JAMES BARTLEY ELLIS, individually and on behalf of all others similarly situated,<br><br>                   Plaintiffs,<br><br>     v.<br><br>U.S. BANCORP; and U.S. BANCORP INVESTMENTS, INC.,<br><br>                  Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................1

II.     JURISDICTION AND VENUE ...............................................................................2

III.    PARTIES ......................................................................................................................3

     A.    Plaintiffs ............................................................................................................3

     B.    Defendants .........................................................................................................7

     C.    Relevant Non-Parties .......................................................................................7

IV.    FACTUAL ALLEGATIONS ...................................................................................7

     A.    Defendants' Bank Deposit Program ...............................................................8

     B.    USBI's Duties to Customers Enrolled in the Bank Deposit Program ..................10

          1.    USBI's Fiduciary Duty Arising from Its Role as Bank Deposit Program Customers' Agent....................................10

          2.    USBI's Duty to Charge Reasonable Fees Arising from FINRA Rule 2122 ...................................11

          3.    USBI's Duty of Good Faith and Fair Dealing ...........................................12

          4.    USBI's Fiduciary Duty Under Regulation Best Interest............................12

          5.    Defendants Know the Bank Deposit Program Must Offer Reasonable Interest Rates ..............................15

     C.    The Bank Deposit Program Fails to Pay Reasonable Interest Rates ....................16

     D.    The Bank Deposit Program Benefits Defendants at the Expense of Customers ....................20

     E.    USBI's Disclosures to Its Customers About the Bank Deposit Program Contained Material Misrepresentations and Omissions ........................22

V.     CLASS ACTION ALLEGATIONS .................................................................24

VI.    CLAIMS FOR RELIEF ....................................................................28

     COUNT I Breach of Fiduciary Duty ...........................................28

     COUNT II Negligence .........................................29

     COUNT III Breach of Implied Covenant of Good Faith and Fair Dealing ....................30

     COUNT IV Negligent Misrepresentations and Omissions................................31

     COUNT V Violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69 ........................32

COUNT VI Violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44.................................................................................33

COUNT VII Unjust Enrichment ..............................................................34

VII.    PRAYER FOR RELIEF ....................................................................35

VIII.   DEMAND FOR JURY TRIAL ...........................................................36

Plaintiff Adam Saul Futo and Plaintiff James Bartley Ellis (together, "Plaintiffs") bring this Class Action Complaint ("Complaint") against U.S. Bancorp and U.S. Bancorp Investments, Inc., ("USBI" and, with U.S. Bancorp, "Defendants"), individually and on behalf of the Class (defined below).[1]

## I.    INTRODUCTION

1.    Plaintiffs bring this action to recover damages arising out of Defendants' unlawful conduct related to their Bank Deposit Program (the "Bank Deposit Program," or the "Program"), by which USBI transfers cash from its customers' accounts into interest-bearing deposit accounts at U.S. Bank National Association ("U.S. Bank"), an affiliate of USBI and a wholly-owned subsidiary of U.S. Bancorp, and pays unreasonably low interest payments to customers on that cash.

2.    Ostensibly, the primary purpose of the Bank Deposit Program is to provide customers with interest on their uninvested cash.

3.    However, Defendants used their Bank Deposit Program to generate substantial returns on customers' cash, almost none of which was returned to customers in the form of reasonable interest on their deposits. While asserting in its Sweep Program Disclosure Statement that it operates the Bank Deposit Program as its customers' agent, USBI and its affiliate U.S. Bank retain ***nearly all*** the returns their customers' cash generates. Defendants facilitate this by offering an unreasonably low interest rate on cash in the Bank Deposit Program—currently between 0.23%

---

[1] The allegations herein are based on personal knowledge as to Plaintiffs' own conduct, and are made on information and belief as to all other matters, based on an investigation by counsel, which included a review of documents created and distributed by Defendants; filings with the U.S. Securities and Exchange Commission ("SEC"); SEC and Financial Industry Regulatory Authority ("FINRA") rules and regulations; and other publicly available commentary, analysis, and information. Upon information and belief, Plaintiff submits that discovery will further support the allegations in this Class Action Complaint ("Complaint").

and 1.80% (depending on a customer's cash balance)—to customers, even as competing financial institutions including Vanguard and Fidelity offer interest rates more than 17 times higher on their own customers' swept cash.

4.      The Bank Deposit Program is primarily a source of income for U.S. Bancorp. While its customers receive unreasonable, below-market interest rates on cash held in the Program, U.S. Bancorp profits significantly.

5.      In violation of their express and implied obligations, Defendants designed, implemented, and operated the Bank Deposit Program to benefit themselves at the expense of their customers.

6.      Plaintiffs, individually and on behalf of the Class, bring this class action to remedy the significant financial harm caused by Defendants' use of the Bank Deposit Program to enrich themselves at the expense of customers, and assert claims against Defendants for breach of fiduciary duty, negligence, breach of the implied covenant of good faith and fair dealing, negligent misrepresentations and omissions, violation of Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44, and unjust enrichment.

## II.    JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 Class members, Plaintiffs are citizens of different states than Defendants, and greater than two-thirds of the Class reside in states other than the state in which any Defendant is a citizen.

8.      This Court has personal jurisdiction over Defendants as they maintain their principal places of business in Minnesota.

9.      Venue is appropriate within this District under 28 U.S.C. § 1391. At all relevant times, Defendants maintained their principal places of business in this District and engaged in a substantial portion of the activity at issue in this Complaint in this District.

10.      No other forum would be more convenient for the parties and witnesses to litigate this case.

## III.    PARTIES

### A.    Plaintiffs

11.      Plaintiff Adam Saul Futo ("Plaintiff Futo") is a citizen of California and resides in San Diego, California. Plaintiff Futo has had an IRA account through USBI, with USBI as IRA Custodian, since 2016. At the time that he opened his IRA account with USBI, Plaintiff Futo reviewed the agreements and disclosures pertaining to his account that were in effect. During or before 2017 and at all times thereafter, USBI continuously swept uninvested cash balances from Plaintiff Futo's IRA account to a deposit account with U.S. Bank as part of the Bank Deposit Program. USBI paid interest payments to Plaintiff Futo on uninvested cash balances held in those deposit accounts at the Bank Deposit Program's unreasonably low interest rates. Currently, Plaintiff Futo is receiving monthly interest payments at a rate of 0.23% on cash balances maintained in the Bank Deposit Program.

12.      The following chart shows the rates of interest USBI provided to Plaintiff Futo for cash held in deposit accounts as part of the Program from June 2022 to February 2025:

| MONTH | BANK DEPOSIT PROGRAM INTEREST RATE | BENCHMARK FEDERAL FUNDS RATE |
|---|---|---|
| June 2022 | 0.07% | 0.75% to 1.00% (until June 16, 2022)<br>1.50% to 1.75% (as of June 16, 2022) |
| July 2022 | 0.07% | 1.50% to 1.75% (until July 27, 2022)<br>2.25% to 2.50% (as of July 27, 2022) |
| August 2022 | 0.20% | 2.25% to 2.50% |
| September 2022 | 0.20% | 2.25% to 2.50% (until September 21, 2022)<br>3.00% to 3.25% (as of September 21, 2022) |
| October 2022 | 0.25% | 3.00% to 3.25% |
| November 2022 | 0.30% | 3.00% to 3.25% (until November 2, 2022)<br>3.75% to 4.00% (as of November 2, 2022) |
| December 2022 | 0.35% | 3.75% to 4.00% (until December 14, 2022)<br>4.25% to 4.50% (as of December 14, 2022) |
| January 2023 | 0.35% | 4.25% to 4.50% |
| February 2023 | 0.45% | 4.50% to 4.75% |
| March 2023 | 0.50% | 4.50% to 4.75% (until March 22, 2023)<br>4.75% to 5.00% (as of March 22, 2023) |
| April 2023 | 0.50% | 4.75% to 5.00% |
| May 2023 | 0.50% | 4.75% to 5.00% (until May 3, 2023)<br>5.00% to 5.25% (as of May 3, 2023) |
| June 2023 | 0.50% | 5.00% to 5.25% |
| July 2023 | 0.50% | 5.00% to 5.25% (until July 26, 2023)<br>5.25% to 5.50% (as of July 26, 2023) |
| August 2023 | 0.50% | 5.25% to 5.50% |
| September 2023 | 0.50% | 5.25% to 5.50% |
| October 2023 | 0.50% | 5.25% to 5.50% |
| November 2023 | 0.50% | 5.25% to 5.50% |
| December 2023 | 0.50% | 5.25% to 5.50% |
| January 2024 | 0.499 % | 5.25% to 5.50% |
| February 2024 | 0.499% | 5.25% to 5.50% |
| March 2024 | 0.50% | 5.25% to 5.50% |
| April 2024 | 0.50% | 5.25% to 5.50% |
| May 2024 | 0.50% | 5.25% to 5.50% |
| June 2024 | 0.50% | 5.25% to 5.50% |
| July 2024 | 0.50% | 5.25% to 5.50% |
| August 2024 | 0.50% | 5.25% to 5.50% |
| September 2024 | 0.50% | 5.25% to 5.50% (until September 18, 2024)<br>4.75% to 5.00% (as of September 18, 2024) |
| October 2024 | 0.30% | 4.75% to 5.00% |
| November 2024 | 0.30% | 4.75% to 5.00% (until November 7, 2024)<br>4.50% to 4.75% (as of November 7, 2024) |
| December 2024 | 0.25% | 4.50% to 4.75% (until December 18, 2024)<br>4.25% to 4.50% (as of December 18, 2024) |
| January 2025 | 0.23% | 4.25% to 4.50% |
| February 2025 | 0.23% | 4.25% to 4.50% |

4

13.    Plaintiff James Bartley Ellis ("Plaintiff Ellis") is a citizen of Missouri and resides in St. Peters, Missouri. Plaintiff Ellis has had a brokerage account through USBI since 2022. At the time that he opened his brokerage account with USBI, Plaintiff Ellis reviewed the agreements and disclosures pertaining to his account that were in effect at the time. From the time Plaintiff Ellis opened his brokerage account and at all times thereafter, USBI continuously swept uninvested cash balances from Plaintiff Ellis's brokerage account to a deposit account with U.S. Bank as part of the Bank Deposit Program. USBI paid interest payments to Plaintiff Ellis on uninvested cash balances held in those deposit accounts at the Bank Deposit Program's unreasonably low interest rates. Currently, Plaintiff Ellis is receiving monthly interest payments at a rate of 0.23% on cash balances maintained in the Bank Deposit Program.

14.    The following chart shows the rates of interest USBI provided to Plaintiff Ellis for cash held in deposit accounts as part of the Program from August 2022 to February 2025:

| MONTH | BANK DEPOSIT PROGRAM INTEREST RATE | BENCHMARK FEDERAL FUNDS RATE |
|---|---|---|
| August 2022 | 0.20% | 2.25% to 2.50% |
| September 2022 | 0.20% | 2.25% to 2.50% (until September 21, 2022) 3.00% to 3.25% (as of September 21, 2022) |
| October 2022 | 0.25% | 3.00% to 3.25% |
| November 2022 | 0.30% | 3.00% to 3.25% (until November 2, 2022) 3.75% to 4.00% (as of November 2, 2022) |
| December 2022 | 0.35% | 3.75% to 4.00% (as of December 14, 2022) 4.25% to 4.50% (as of December 14, 2022) |
| January 2023 | 0.35% | 4.25% to 4.50% |
| February 2023 | 0.45% | 4.50% to 4.75% |
| March 2023 | 0.50% | 4.50% to 4.75% (until March 22, 2023) 4.75% to 5.00% (as of March 22, 2023) |
| April 2023 | 0.50% | 4.75% to 5.00% |
| May 2023 | 0.50% | 4.75% to 5.00% (until May 3, 2023) 5.00% to 5.25% (as of May 3, 2023) |
| June 2023 | 0.50% | 5.00% to 5.25% |
| July 2023 | 0.50% | 5.00% to 5.25% (until July 26, 2023) 5.25% to 5.50% (as of July 26, 2023) |
| August 2023 | 0.50% | 5.25% to 5.50% |
| September 2023 | 0.50% | 5.25% to 5.50% |
| October 2023 | 0.50% | 5.25% to 5.50% |
| November 2023 | 0.50% | 5.25% to 5.50% |
| December 2023 | 0.50% | 5.25% to 5.50% |
| January 2024 | 0.499 % | 5.25% to 5.50% |
| February 2024 | 0.499% | 5.25% to 5.50% |
| March 2024 | 0.50% | 5.25% to 5.50% |
| April 2024 | 0.50% | 5.25% to 5.50% |
| May 2024 | 0.50% | 5.25% to 5.50% |
| June 2024 | 0.50% | 5.25% to 5.50% |
| July 2024 | 0.50% | 5.25% to 5.50% |
| August 2024 | 0.50% | 5.25% to 5.50% |
| September 2024 | 0.50% | 5.25% to 5.50% (until September 18, 2024) 4.75% to 5.00% (as of September 18, 2024) |
| October 2024 | 0.30% | 4.75% to 5.00% |
| November 2024 | 0.30% | 4.75% to 5.00% (until November 7, 2024) 4.50% to 4.75% (as of November 7, 2024) |
| December 2024 | 0.25% | 4.50% to 4.75% (until December 18, 2024) 4.25% to 4.50% (as of December 18, 2024) |
| January 2025 | 0.23% | 4.25% to 4.50% |
| February 2025 | 0.23% | 4.25% to 4.50% |

**B.    Defendants**

15.    Defendant U.S. Bancorp is a Delaware corporation with its principal executive offices located in Minneapolis, Minnesota.

16.    Defendant U.S. Bancorp Investments, Inc., a wholly-owned subsidiary of Defendant U.S Bancorp, is a Delaware corporation with its principal executive offices located in Saint Paul, Minnesota. U.S. Bancorp is a registered broker-dealer with the SEC, a member firm of FINRA, and a member of the Securities Investor Protection Corporation. USBI conducts business with respect to brokerage accounts as "U.S. Wealth Management."

**C.    Relevant Non-Parties**

17.    Non-party U.S. Bank National Association ("U.S. Bank"), is a wholly-owned subsidiary of Defendant U.S. Bancorp. U.S Bancorp reports its financial results, and that of its subsidiaries, including U.S. Bank, on a consolidated basis, and as a result, U.S. Bank's earnings inure directly to the benefit of U.S. Bancorp.

## IV.    FACTUAL ALLEGATIONS

18.    U.S. Bancorp is a financial services holding company that serves millions of local, national, and international customers. It provides a full range of financial services, including lending and depository services, cash management, capital markets, and trust and investment management services. It also engages in credit card services, merchant and ATM processing, mortgage banking, insurance, brokerage services, and leasing.

19.    USBI is U.S. Bancorp's SEC-registered broker-dealer subsidiary. USBI offers investment-related products and services, including brokerage services and discretionary and non-discretionary investment advisory services to retail customers throughout the United States.

20.    USBI offers a number of brokerage account types to investors. These brokerage accounts are securities accounts that allow customers to trade mutual funds, stocks, and other

7

securities. In connection with each of these accounts, customers enter into account agreements with USBI (the "Account Agreements").[2]

21.    USBI's Universal Customer Agreement contains a choice of law provision, which provides, in relevant part, that the agreement and its enforcement will be governed by the laws of the State of Minnesota.

**A.    Defendants' Bank Deposit Program**

22.    A sweep program is a "service provided by a broker or dealer where it offers to its customer the option to automatically transfer free credit balances in the securities account of the customer to either a money market mutual fund product . . . or an account at a bank whose deposits are insured by the Federal Deposit Insurance Corporation." *See* 17 C.F.R. § 240.15c3-3(a)(17) (2025).

23.    Sweep deposits provide an important source of capital for banks. Banks can use the deposits for general corporate purposes, including making loans or investing in government securities. The difference between the interest rate paid on a sweep account and the interest rate earned by a bank contributes to the bank's net interest income.

24.    USBI operates a cash sweep program for its customers. Under the Program, which is enabled by default when customers open a brokerage account with USBI, USBI continuously transfers uninvested cash balances in customers' brokerage accounts into interest-bearing deposit accounts at U.S. Bank. Customers are automatically enrolled in the Bank Deposit Program upon opening a USBI brokerage account.

---

[2]  Specifically, the Account Agreements include USBI's Universal Customer Agreement, Traditional & Roth IRA Custodial Agreements and Disclosure Statement, and Sweep Program Disclosure Statement.

25.     USBI acts as its customers' agent and custodian in establishing and maintaining the deposit accounts at U.S. Bank as part of the Bank Deposit Program, with no requirement that the customers have a direct relationship with U.S. Bank. All deposits and withdrawals from the deposit accounts in the Bank Deposit Program are made by USBI on its customers' behalf. USBI is authorized to change the products available under the Bank Deposit Program.

26.     Once enrolled in the Bank Deposit Program, customers rely on USBI to negotiate the interest rates they receive on their swept cash and to open the deposit accounts where the cash should be held at U.S. Bank. USBI is able to "modify the Program at any time by changing the eligibility for the Program, changing the terms and conditions, and adding or changing banks into which the available cash in [customer] Brokerage Account[s] will be deposited."[3]

27.     Interest rates on cash held in deposit accounts through the Bank Deposit Program are tiered based on the "balances in the [Program] [d]eposit [a]ccounts held through a single Brokerage Account."[4]

28.     Under the Bank Deposit Program, interest compounds daily on customers' cash, and USBI pays interest to customers monthly.

29.     In addition to generating interest payments on uninvested cash for USBI's customers, the Bank Deposit Program provides financial benefits for both U.S. Bank and USBI. U.S. Bank receives a stable source of deposits and USBI receives a fee from U.S Bank for each account enrolled in the Bank Deposit Program "equal to the difference between the interest paid and other costs incurred by U.S. Bank on bank deposits, and the interest or other income earned on U.S. Bank's loans, investments and other assets for each Brokerage Account that sweeps

---

[3] *Sweep Program Disclosure Statement*, USBI 2 (2024), https://www.usbank.com/dam/documents/pdf/wealth-management/usbi-sweep-program-disclosure.pdf.
[4] *Id.*

9

through the Program."[5] The amount of fees received by USBI affects the interest rate paid on customers' deposit accounts.

**B.    USBI's Duties to Customers Enrolled in the Bank Deposit Program**

30.    USBI owes numerous fiduciary, contractual, and implied duties to its customers with respect to its Bank Deposit Program, which are derived from its relationship with its customers, agreements with those customers, and federal statutes and regulations, including to put its customers' best interests ahead of its own and to pay customers a "reasonable rate" of interest on their cash sweep balances.

**1.    USBI's Fiduciary Duty Arising from Its Role as Bank Deposit Program Customers' Agent**

31.    USBI's Sweep Program Disclosure Statement describes USBI's relationship with customers for the purpose of operating the Bank Deposit Program.

32.    Under the Sweep Program Disclosure Statement, USBI agrees to act as its customers' agent, stating that USBI "will act as your agent and custodian in establishing and maintaining the Deposit Accounts at U.S. Bank," and is entrusted with discretionary control to "modify the Program at any time by changing the eligibility for the Program, changing the terms and conditions, and adding or changing banks into which the available cash in [customer] Brokerage Account[s] will be deposited."[6]

33.    The Sweep Program Disclosure Statement also acknowledges that USBI is "acting as [the Bank Deposit Program customers'] agent in establishing and as your custodian in holding the Deposit Accounts at U.S. Bank, depositing funds into the Deposit Accounts, withdrawing funds from the Deposit Accounts, and transferring funds among the Deposit Accounts."[7]

---

[5] *Id.* at 3.
[6] *Id.* at 1-2.
[7] *Id.* at 3.

34.     USBI has discretion to "modify the Program at any time by changing the eligibility for the Program, changing the terms and conditions, and adding or changing banks into which the available cash in [the customer's] Brokerage Account[s] will be deposited."[8]

35.     Because USBI acts as its customers' agent for the purposes of managing the relationship with the bank where customers' cash is deposited through the Bank Deposit Program, establishing deposit accounts, making deposits, and making withdrawals under the Bank Deposit Program and exercises discretion in carrying out its duties as agent, USBI owes fiduciary duties to customers enrolled in the Bank Deposit Program.

### 2.     USBI's Duty to Charge Reasonable Fees Arising from FINRA Rule 2122

36.     Additionally, USBI's Universal Customer Agreement specifies that it is subject to "the rules and regulations of all federal, state and self-regulatory agencies, including but not limited to the Financial Industry Regulatory Authority (FINRA)."[9]

37.     Thus, in its Universal Customer Agreement, USBI implicitly recognizes that it is subject to FINRA Rule 2122, which provides that "[c]harges, if any, for services performed, including, but not limited to, miscellaneous services such as collection of monies due for principal, dividends, or interest; exchange or transfer of securities; appraisals, safe-keeping or custody of securities, and other services shall be reasonable and not unfairly discriminatory among customers."[10]

38.     USBI's collection of a fee "equal to the difference between the interest paid and other costs incurred by U.S. Bank on bank deposits, and the interest or other income earned on

---

[8] *Id.* at 2.
[9]     *Universal Customer Agreement and Account Disclosures*, USBI 1 (2024), https://www.usbank.com/dam/documents/pdf/universal-customer-agreement.pdf.
[10] FINRA Rule 2122, https://www.finra.org/rules-guidance/rulebooks/finra-rules/2122.

U.S. Bank's loans, investments and other assets for each Brokerage Account that sweeps through the Program"[11] is not a reasonable fee for providing the Bank Deposit Program to customers and violates FINRA Rule 2122.

### 3.    USBI's Duty of Good Faith and Fair Dealing

39.    Additionally, under Minnesota law, a covenant of good faith and fair dealing is implied in every contract, and that duty is breached when a party to a contract acts dishonestly, maliciously, or otherwise in subjective bad faith.

40.    Accordingly, by entering into the Account Agreements, USBI established a covenant of good faith and fair dealing with its customers.

### 4.    USBI's Fiduciary Duty Under Regulation Best Interest

41.    Where USBI is acting in its capacity as a broker-dealer, as it does when it offers brokerage services, it "shall act in the best interest of the retail customer at the time [a] recommendation is made, without placing the financial or other interest of the broker, dealer . . . ahead of the interest of the retail customer." *See* Regulation Best Interest ("Reg. BI"), 17 C.F.R. § 240.15l-1 (2019).

42.    Reg. BI incorporates "key principles underlying fiduciary obligations." 84 Fed. Reg. 33318, 33320 (July 12, 2019). Reg. BI and common law principles of fiduciary obligations "generally yield substantially similar results in terms of the ultimate responsibilities owed to retail investors."[12]

---

[11]    *Sweep Program Disclosure Statement*, USBI 3 (2024), https://www.usbank.com/ dam/documents/pdf/wealth-management/usbi-sweep-program-disclosure.pdf.

[12]    *Staff Bulletin: Standards of Conduct for Broker-Dealers and Investment Advisers Account Recommendations for Retail Investors*, SEC (Mar. 20, 2022), https://www.sec.gov/about/divisions-offices/division-trading-markets/broker-dealers/staff-bulletin-standards-conduct-broker-dealers-investment-advisers-account-recommendations-retail. (last accessed on April 14, 2025)

43.    Under Reg. BI, the investor "will be entitled to a recommendation . . . or advice . . . that is in the best interest of the retail investor and that does not place the interests of the firm or the financial professional ahead of the interests of the retail investor." 84 Fed. Reg. 33318, 33321.

44.    Reg. BI consists of a "General Obligation," which states, "[w]hen making a recommendation, a broker-dealer must act in the retail customer's best interest and cannot place its own interests ahead of the customer's interests." 84 Fed. Reg. 33318, 33320.

45.    Within the General Obligation are more specific duties, including disclosure duties and a duty to avoid and disclose conflicts of interest.

46.    These specific duties require disclosure of "all material facts relating to conflicts of interest. . . that might incline a broker-dealer to make a recommendation that is not disinterested, including, for example, conflicts associated with proprietary products, payments from third parties, and compensation arrangements." 84 Fed. Reg. 33318, 33321.

47.    One component of a broker-dealer's duty to disclose conflicts of interest concerns compensation. "The receipt of higher compensation for recommending some products rather than others, whether received by the broker-dealer, the associated person, or both, is a fundamental and powerful incentive to favor one product over another." 84 Fed. Reg. 33318, 33364.

48.    Pursuant to Reg. BI, USBI is and was required to act in the best interests of its clients when recommending an account type—including recommending and choosing the Bank Deposit Program as the vehicle for customers' uninvested cash to earn interest when those clients opened their accounts with USBI. Reg. BI obligates USBI to have an "understanding of the characteristics of a particular type of account [and] consider, without limitation, factors such as

13

the services and products provided in the account (including ancillary services provided in conjunction with an account type)."[13]

49.    The SEC recently reiterated that compensation, revenue, and other benefits from cash sweep programs give rise to a conflict of interest for both broker-dealers and investment advisers.[14]

50.    Under Reg. BI, USBI was and is prohibited from elevating its own interest above its customers' interests when recommending an account type or investment strategy, and was and is obligated to avoid conflicts with customers' interests and to disclose material facts concerning any conflicts that may exist.

51.    USBI's placement of uninvested cash from Plaintiffs' and the Class's accounts into deposit accounts at U.S. Bank as a part of the Bank Deposit Program constitutes a "recommendation" within the scope of Reg. BI, and as a result, USBI was required to act in the best interests of its customers when making that recommendation, to adequately disclose the fees it was receiving in connection with the Program, and to adequately disclose the benefit Defendants were receiving from holding customer cash in deposit accounts at U.S. Bank as part of the Program.

52.    USBI admits that this duty applies in its Guide to Brokerage Recommendations: A Best Interest Disclosure:

> Under the SEC's Regulation Best Interest, when we recommend a security or an investment strategy involving a security as a broker-dealer to a retail customer we must act in your best interest at the time the

---

[13] *Staff Bulletin*, supra note 12.
[14] *Staff Bulletin*, supra note 12.

recommendation is made, without placing our financial or other interest ahead of your interest.[15]

**5.    Defendants Know the Bank Deposit Program Must Offer Reasonable Interest Rates**

53.    In addition to the above-referenced duties that USBI owes to all customers enrolled in the Bank Deposit Program, pursuant to Section 4975 of the Internal Revenue Code ("IRC Section 4975"), USBI must offer retirement account investors a reasonable rate of interest on funds held in deposit accounts as part of the Bank Deposit Program to maintain the federal income tax exemption applicable to those accounts. USBI's retirement account customers expect that USBI is acting in compliance with the legal requirements governing the tax-exempt status of their accounts.

54.    IRC Section 4975, which applies to IRAs generally, imposes taxes on "prohibited transactions" which could include related party transactions like USBI sweeping customers' uninvested cash to deposit accounts at U.S Bank via the Bank Deposit Program. IRC § 4975(d)(4), however, provides several "exemptions" for otherwise "prohibited transactions," one of which is "the investment of all or part of a plan's assets in deposits *which bear a reasonable interest rate* in a bank or similar financial institution." (emphasis added).[16]

---

[15] *See Guide to Brokerage Recommendations: A Best Interest Disclosure*, USBI 1 (Apr. 5, 2024), https://www.usbank.com/dam/documents/pdf/wealth-management/Guide-to-Brokerage-Recommendations.pdf.

[16] Regulations promulgated by the Department of the Treasury confirm that USBI must provide "a reasonable rate of interest" under its Bank Deposit Program. *See* 26 C.F.R. § 54.4975-6(b)(1) (emphasis added) ("Section 4975(d)(4) exempts from the excise taxes imposed by section 4975 investment of all or a part of a plan's assets in deposits bearing *a reasonable rate of interest in a bank* or similar financial institution . . . , even though such bank or similar financial institution is a fiduciary or other disqualified person with respect to the plan.") *Id*. (emphasis added). Treasury regulations also mandate that when a financial institution "invests plan assets in deposits in itself or its affiliates under an authorization contained in a plan or trust instrument," the authorization "must name" the institution and "must state that [it] . . . may make investments in deposits which bear a *reasonable rate of interest* in itself (or in an affiliate)." *Id*. § 54.4975-6(b)(3).

55.     Defendants explicitly recognize that IRC Section 4975 applies to the operation of their retirement accounts.[17]

56.     Moreover, the American Bankers Association, of which U.S. Bancorp is a member, recognized in a March 15, 2017 letter to the Department of Labor (the "ABA Letter") that, with regard to sweep programs applying to IRA accounts, "banks have routinely relied on the statutory exemption [for prohibited transactions] available for bank deposit product programs under Section 4975(d)(4) of the Code," and attached a white paper from Morgan, Lewis & Bockius LLP, which (at 4) specifically notes that a bank may "invest an IRA's assets in its own deposit accounts" "which bear a reasonable interest rate" pursuant to the exemption "found in Section 4975(d)(4) of the Code and Section 408(b)(4) of ERISA."[18] The Bank Deposit Program is the sweep vehicle that applies to all of USBI's brokerage accounts, including retirement accounts. The ABA Letter evidences Defendants' recognition that the Bank Deposit Program constitutes conflicted, presumptively prohibited transactions that are only permitted if depositors are receiving a "reasonable" rate of interest.

### C.     The Bank Deposit Program Fails to Pay Reasonable Interest Rates

57.     Despite its duties to act in its customers' best interest and provide customers with a reasonable rate of interest on their swept cash, USBI fails to pay to or secure a reasonable rate of interest on cash balances in the Bank Deposit Program.

---

[17] *See Traditional and Roth IRA Custodial Agreements and Disclosure Statement*, USBI (Oct. 2024),
https://www.usbank.com/dam/documents/pdf/wealth-management/ira-and-roth-custodial-agreements-and-disclosure.pdf.
[18] Letter from Timothy E. Keehan, SVP, Senior Counsel Asset Management, American Bankers Association, to Joe Canary, Director of Regulations and Interpretations, Employee Benefits Security Administration, U.S. Department of Labor (Jan. 2, 2024), https://www.dol.gov/sites/dolgov/files/ebsa/laws-and-regulations/rules-and-regulations/public-comments/1210-AB79/00937.pdf.

58.    For example, as of April 10, 2025, the interest rates USBI paid or secured for cash deposits in the Bank Deposit Program were between 0.23% and 1.80%, depending on a given customer's cash balance:

| Balance | Interest Rate | Annual Percentage Yield | Effective Date |
|---|---|---|---|
| Less than $5,000 | 0.23% | 0.23% | 1/10/25 |
| $5,000 - $24,999 | 0.23% | 0.23% | 1/10/25 |
| $25,000 - $49,999 | 0.23% | 0.23% | 1/10/25 |
| $50,000 - $99,999 | 0.23% | 0.23% | 1/10/25 |
| $100,000 - $249,999 | 0.23% | 0.23% | 1/10/25 |
| $250,000 - $499,999 | 0.50% | 0.50% | 1/10/25 |
| $500,000 - $999,999 | 0.50% | 0.50% | 1/10/25 |
| $1,000,000 - $4,999,999 | 1.70% | 1.71% | 1/10/25 |
| $5,000,000 and above | 1.80% | 1.81% | 1/10/25 |

59.    The interest rates USBI paid or secured for cash deposits in the Bank Deposit Program have been consistently low:

| Effective Date | Bank Deposit Interest Rate |
|---|---|
| June 29, 2022 | 0.07% to 0.30% |
| November 17, 2022 | 0.30% to 1.40% |
| February 10, 2023 | 0.45% to 1.71% |

| May 11, 2023 | 0.50% to 2.00% |
|---|---|
| October 25, 2024 | 0.30% to 2.00% |
| January 10, 2025 | 0.23% to 1.80% |

60.     The interest rates that USBI pays to or secures for its customers in the Bank Deposit Program are unreasonably low, with Defendants pocketing nearly the entire spread made on the cash. This constitutes a breach of USBI's fiduciary, contractual, regulatory, and common law duties to its customers and falls below the applicable standards of care.

61.     Under any definition of the term, USBI did not secure and pay "reasonable" rates of interest to Plaintiffs and the Class on deposits made via the Bank Deposit Program and therefore, did not act in its customers' "best interests."

62.     In 2003, the DOL provided the following definition of a "reasonable" rate of interest when determining the exemption to certain prohibited transaction restrictions under IRC Section 4975. *See* 68 Fed. Reg. 34646, 34648 (June 10, 2003). The DOL explained that a reasonable rate of interest is determinable by reference to, *inter alia*, short term rates "offered by other banks," "those available from money market funds," "or by reference to a benchmark such as sovereign short term debt (*e.g.*, in the U.S., treasury bills)." *Id*.

63.     The rates offered through the Bank Deposit Program are significantly lower than the rates offered through sweep programs at other financial institutions. For example, the following chart compares USBI's Bank Deposit Program's rates with those of two comparable programs:

| U.S. Bancorp Sweep Rate[19] | Vanguard Sweep Rate[20] | Fidelity Sweep Rate[21] |
|:---:|:---:|:---:|
| 0.23% to 1.80% | 3.65% | 3.97% |

64.    Thus, other financial institutions that use sweep programs pay or secure significantly higher rates than U.S. Bancorp—in some instances, even more than 17 times higher.

65.    Likewise, money market fund rates also provide a benchmark for determining what constitutes a "reasonable rate" and/or a reasonable alternative investment for customers' cash.

66.    Some of USBI's competitors sweep any uninvested cash deposited in its customers' accounts into money market funds that earn comparably higher rates of interest. For example, by default, Fidelity sweeps uninvested cash in its retail customers' accounts into a money market fund currently earning 3.97%.[22]

67.    USBI's interest rates for deposits in its Bank Deposit Program are also astonishingly low in comparison to short term U.S. Treasury rates. For example, the 1-Month U.S. Treasury Rate on April 10, 2025 was 4.36%, compared to USBI's rates under the Bank Deposit Program of 0.23% to 1.80% that same day.

68.    In fact, while USBI's interest rates under the Bank Deposit Program have ranged from 0.07% to 2.0% from June 2022 to present, the 1-Month U.S. Treasury Rate reached over 5% during that same period:

---

[19]    *See U.S. Bancorp Bank Deposit Sweep Program*, US Wealth Management, https://www.usbank.com/investing/rates.html (last accessed Apr. 11, 2025).
[20]    *See Vanguard Cash Plus Account*, Vanguard, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last accessed Apr. 11, 2025).
[21]    *Help your cash work harder*, Fidelity, https://www.fidelity.com/go/manage-cash-rising-costs (last accessed Apr. 10, 2025).
[22]    *See id.*



Source: Board of Governors of the Federal Reserve System (US) via FRED®

69.    USBI's Bank Deposit Program interest rates are also far below the Federal Reserve's benchmark federal funds rates. Since 2022, the federal funds rate—the interest rate at which banks lend to one another—has increased significantly from a low of 0.08% to a high of 5.33% in 2024. As these rates were climbing, USBI failed to offer similar interest rates to customers in the Bank Deposit Program, offering a maximum interest rate—for a period—of 2.00% for customers with the highest cash balances. Today, while the current benchmark federal funds rates are 4.25% to 4.50%, Plaintiffs receive only 0.23% interest on their cash held in the Bank Deposit Program and even USBI customers with the highest cash balances receiving only 1.80% interest.

**D.    The Bank Deposit Program Benefits Defendants at the Expense of Customers**

70.    The Bank Deposit Program primarily benefits Defendants at the expense of Plaintiffs and the Class.

71.    Defendants have devised a scheme by which they generate significant profits for themselves using customers' cash balances in the Bank Deposit Program. The scheme is designed to maximize profits for Defendants while at the same time disregarding customers' best interest.

72.    USBI directs cash balances in accounts participating in the Bank Deposit Program to U.S. Bank. U.S. Bank earns interest revenue on non-trading assets that it holds, including the

cash deposits held as part of the Bank Deposit Program. There is a significant difference, or "spread," between what U.S. Bank earns on the deposits in the Bank Deposit Program and the interest that USBI pays to Plaintiffs and the Class on those deposits. Nearly all the spread is pocketed by U.S. Bank itself, with a portion of that spread paid to USBI as a fee, despite the fact that USBI is acting as an agent and fiduciary for Plaintiffs and the Class and is obligated to prudently handle customers' cash, including by securing or providing reasonable interest rates on Plaintiffs' and the Class's swept cash and to act in Plaintiffs' and the Class's best interest.

73.    Instead of exercising its discretion to benefit Plaintiffs and the Class, USBI abuses its discretion with regard to the operation of the Bank Deposit Program to benefit Defendants.

74.    While U.S. Bank is not a fiduciary of customers enrolled in USBI's Bank Deposit Program, and can establish whatever "spread" it negotiates in arm's length transactions with its depositors, USBI *is* a fiduciary of those customers, and in that capacity is required to put its customers' interests first while negotiating and entering into transactions with U.S. Bank regarding the Bank Deposit Program. Additionally, USBI is required to procure for its customers, reasonable rates of interest on cash swept into U.S. Bank deposit accounts.

75.    Defendants' scheme allows Defendants to boost their net interest income by paying to Plaintiffs and the Class an unreasonably low interest rate that constitutes only a miniscule fraction of the return produced by cash held in their deposit accounts as part of the Bank Deposit Program.

76.    Indeed, U.S. Bancorp's net revenue is heavily impacted by its net interest income.

77.    As U.S. Bancorp explained in its annual report filed with the U.S. Securities and Exchange Commission on February 21, 2025 (the "2024 U.S. Bancorp Annual Report"), "the Company's earnings are dependent to a large degree on net interest income, which is the difference

between interest income from loans and investments and interest expense on deposits and borrowings."[23]

78.    The 2024 U.S. Bancorp Annual Report additionally acknowledged that U.S. Bancorp "relies on customer deposits as a low-cost and stable source of funding" and that "[l]oss of customer deposits could increase the Company's funding costs."[24] These customer deposits that afford U.S. Bancorp low-cost funding include customer deposits made through the Bank Deposit Program.

79.    The rates paid by USBI to its customers pursuant to the Bank Deposit Program violate USBI's duties to its customers because these rates are not reasonable and were determined by placing Defendants' best interests ahead of the best interests of customers enrolled in the Bank Deposit Program.

80.    USBI's continual sweep of Plaintiffs' and the Class's cash into the Bank Deposit Program constitutes a continuing wrong and is a continuing breach of USBI's duties to Plaintiff and the Class. Each time USBI places Plaintiffs' and the Class's cash into the Bank Deposit Program, USBI newly injures Plaintiffs and the Class.

E.    **USBI's Disclosures to Its Customers About the Bank Deposit Program Contained Material Misrepresentations and Omissions**

81.    The Account Agreements and Guide to Brokerage Recommendations: A Best Interest Disclosure (collectively, the "Bank Deposit Program Disclosures") describe the Bank Deposit Program.

---

[23] U.S. Bancorp, Annual Report (Form 10-K) (Feb. 21, 2025).
[24] *Id.*

82.    The Bank Deposit Program Disclosures contain material misrepresentations and omissions that presented the terms and operation of the Bank Deposit Program inaccurately to Plaintiffs and the Class.

83.    Specifically, USBI made material omissions by failing to disclose that, as discussed above, USBI established and used the Bank Deposit Program to enrich Defendants by paying unreasonably low interest rates to customers in order to increase Defendants' financial benefits from the Bank Deposit Program.

84.    For example, the Sweep Program Disclosure states that "[i]nterest rates on the Deposit Accounts [included in the Bank Deposit Program] can vary and are impacted by several factors, including the amount paid on deposits by U.S. Bank, costs incurred and fees paid to U.S. Bancorp Investments, market environment, competitive factors and other factors."[25] This statement is false and misleading because it indicates that the customer should expect the interest rate to be an amount determined by a reasonable arms-length negotiation between USBI and U.S. Bank based on the market environment. Instead, the interest rates on funds in the Bank Deposit Program were determined by a drive to boost income for Defendants at the expense of customers.

85.    The Sweep Program Disclosure also fails to disclose the interest rates that Bank Deposit Program offers, instead only directing customers to a website.

86.    Additionally, in its Regulation Best Interest Disclosure, USBI recognizes that "[u]nder the SEC's Regulation Best Interest, when we recommend a security or an investment strategy involving a security as a broker-dealer to a retail customer we must act in your best interest at the time the recommendation is made, without placing our financial or other interest ahead of

---

[25] *Sweep Program Disclosure Statement*, USBI 2 (2024), https://www.usbank.com/ dam/documents/pdf/wealth-management/usbi-sweep-program-disclosure.pdf.

your interest."[26] This statement is false and misleading because, when making the recommendations to allocate customer funds to the Bank Deposit Program, USBI places its interests ahead of its customers' interest by placing customers' money into an account that allows Defendants to collect virtually all of the spread made from the customer's deposit.

87.     Unbeknownst to USBI customers enrolled in the Bank Deposit Program, their agent, USBI, enabled the Bank Deposit Program to function as a highly profitable arbitrage operation, with Defendants taking advantage of the nearly free cash funneled from their customers to U.S. Bank and ultimately retaining the vast majority of the profits generated with that cash rather than providing customers with reasonable interest rates.

## V.    CLASS ACTION ALLEGATIONS

88.     Plaintiffs brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2), and (b)(3) on behalf of the following Class:

> All persons holding USBI accounts who had cash deposits or balances in one or more deposit accounts at U.S. Bank pursuant to USBI's Bank Deposit Program (the "Class").

89.     Excluded from the Class are Defendants and their parents, subsidiaries, and corporate affiliates, and governmental entities. Plaintiffs reserve the right to revise the definition of the Class based upon subsequently discovered information and reserves the right to establish Sub-Classes where appropriate.

90.     Members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs at this time.

---

[26] *Guide to Brokerage Recommendations: A Best Interest Disclosure*, USBI 1 (Apr. 5, 2024), https://www.usbank.com/dam/documents/pdf/wealth-management/Guide-to-Brokerage-Recommendations.pdf.

Plaintiffs believe that there are at least tens of thousands of proposed members of the Class throughout the United States. The Class may be identified from Defendants' business records.

91.    Common questions of law and fact exist as to all the Class members and predominate over any issues solely affecting individual Class members. The common and predominating questions of law and fact, each of which may also be certified under Rule 23(c)(4), include, but are not limited to:

a.    Whether USBI owed fiduciary duties to Plaintiffs and the Class in connection with the Bank Deposit Program;

b.    Whether USBI owed duties to Plaintiffs and the Class pursuant to Reg BI in connection with the Bank Deposit Program;

c.    Whether USBI owed duties to Plaintiffs and the Class pursuant to the FINRA rules in connection with the Bank Deposit Program;

d.    Whether USBI breached its duties to Plaintiffs and the Class in establishing, maintaining, and/or operating the Bank Deposit Program;

e.    Whether USBI breached the implied covenant of good faith and fair dealing with Plaintiffs and the Class regarding the Bank Deposit Program;

f.    Whether USBI's disclosures about the Bank Deposit Program contained material misrepresentations and/or omissions;

g.    Whether the Bank Deposit Program unjustly enriched Defendants;

h.    Whether this case may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

i.    Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

j.    Whether and to what extent Plaintiffs and the Class are entitled to recover attorneys' fees and costs.

92.    Plaintiffs' claims are typical of the claims of the Class that Plaintiffs seek to represent. As alleged herein, Plaintiffs and the Class sustained damages arising out of the same unlawful actions and conduct by Defendants.

93.    Plaintiffs are willing and prepared to serve the Class in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or in conflict with the interests of the Class.

94.    Plaintiffs' interests are co-extensive with and are not antagonistic to those of absent members within the Class. Plaintiffs will undertake to represent and protect the interests of absent members within the Class and will vigorously prosecute this action.

95.    Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex class action litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent Class members.

96.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

97.    The damages or other financial detriment suffered by individual Class members are small compared with the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for the Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Individualized litigation would also increase the delay and expense to all parties and the court system from the

26

issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

98.     Superiority is particularly satisfied in these circumstances, where the law of a single state will apply to all state law claims. Under the uniform contract terms with U.S. Bank, the law of Minnesota will apply to each Class member's claims, allowing the Court to adjudicate the claims of all Class members under a single state analysis.

99.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

100.     The Class may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Class, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Class.

101.     The interest of members within the Class individually controlling the prosecution of separate actions is theoretical and not practical. The Class have a high degree of similarity and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

102.     The nature of notice to the proposed Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers, and/or on the internet.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### Breach of Fiduciary Duty
### (Against USBI)

103.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

104.    Plaintiffs bring this cause of action individually and on behalf of all Class members against USBI.

105.    At all relevant times, USBI owed fiduciary duties to Plaintiffs and the Class in connection with the Bank Deposit Program. Such duties independently arose out of (1) the agency relationship between USBI, on one hand, and Plaintiffs and the Class on the other hand, as to the Program; (2) USBI's exercise of control and discretion over funds that belonged to its customers, related to their cash sweep balances; and/or (3) the applicable industry standards.

106.    For the purpose of maintaining and managing the Bank Deposit Program, USBI acted as an agent of Plaintiffs and the Class.

107.    Additionally, under Reg. BI, USBI owed duties to Plaintiffs and the Class by nature of its broker-dealer relationship with Plaintiffs and the Class, and those duties are tantamount to fiduciary obligations for the purposes of this litigation.

108.    As their fiduciary, USBI had a continuing duty to act exclusively for the benefit of Plaintiffs and the Class in connection with establishing, maintaining, and/or operating the Bank Deposit Program.

109.    As a fiduciary to Plaintiffs and the Class, at all relevant times, USBI's duties to Plaintiffs and the Class included, but were not limited to:

    a.   a duty of undivided loyalty;

    b.   a duty to act in the best interests of its clients;

    c.   a duty of care;

    d.   a duty not to place USBI's interests above those of its clients;

    e.   a duty to avoid conflicts of interest; and

    f.   a duty to disclose any conflicts of interest.

110.    Plaintiffs and the Class were fully dependent upon USBI's ability, skill, knowledge, and goodwill with respect to the Bank Deposit Program.

111.    USBI violated each of the foregoing duties when it (1) allocated Plaintiffs' and the Class's cash into deposit accounts that benefited Defendants' interests above their customers' interests; and (2) set and paid an unreasonably low rate of interest on Plaintiffs' and the Class's cash balances in the Bank Deposit Program.

112.    As a direct and proximate consequence of USBI's conduct as alleged herein, Plaintiffs and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of Defendants, as well as all other equitable relief deemed just and proper.

## COUNT II
## Negligence
## (Against USBI)

113.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

114.    Plaintiffs bring this cause of action individually and on behalf of all Class members against USBI.

115.    At all relevant times, USBI owed duties to Plaintiffs and the Class in connection with the Bank Deposit Program. Such duties independently arose out of (1) the agency relationship between USBI, on one hand, and Plaintiffs and the Class on the other hand, as to the Program; (2)

USBI's exercise of control and discretion over funds that belonged to its customers, related to their cash sweep balances; and/or (3) the applicable industry standards.

116.    For the purpose of maintaining and managing the Bank Deposit Program, USBI acted as an agent of Plaintiffs and the Class.

117.    USBI had a continuing duty to act exclusively for the benefit of Plaintiffs and the Class in connection with establishing, maintaining, and/or operating the Bank Deposit Program.

118.    At all relevant times, USBI's duties to Plaintiffs and the Class included, but were not limited to exercising reasonable diligence, care, and skill in operating the Bank Deposit Program, including in selecting the bank where the Program's deposit accounts would be held and in determining the interest rates that would apply to cash held in the Program.

119.    USBI violated each of the foregoing duties when it (1) allocated Plaintiffs' and the Class's cash into deposit accounts that benefited Defendants' interests above their customers' interests; and (2) set and paid an unreasonably low rate of interest on Plaintiffs' and the Class's cash balances in the Bank Deposit Program.

120.    As a direct and proximate consequence of USBI's conduct as alleged herein, Plaintiffs and the Class suffered damages in an amount to be determined at trial and seek disgorgement of any undue and unjust gains of Defendants, as well as all other equitable relief deemed just and proper.

## COUNT III
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against USBI)

121.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

122.    Plaintiffs bring this cause of action individually and on behalf of all Class members against USBI.

123.    Plaintiffs and the Class entered into a written contract with USBI—the terms of which are contained in and incorporated into various standardized documents drafted by USBI, including the Account Agreements. These documents were and are, for all purposes relevant hereto, contracts between customers and USBI.

124.    Plaintiffs and the Class paid valuable consideration in exchange for these contractual rights.

125.    The Account Agreements give USBI discretion in operating the Bank Deposit Program, including the discretion to negotiate interest rates on cash held in the Program.

126.    Inherent in these contracts was, and is, a requirement that USBI refrain from using its discretion as to the operation of the Bank Deposit Program dishonestly, maliciously, or otherwise in subjective bad faith.

127.    By failing to pay Plaintiffs and the Class a reasonable rate of interest on cash held in its Bank Deposit Program, USBI breached the implied covenant of good faith and fair dealing inherent in the Account Agreements. Through the implied covenant of good faith and fair dealing, USBI was obligated to pay Plaintiffs and the Class a reasonable rate of interest on cash held in the Bank Deposit Program rather than using the Program as a profit center for itself. By failing to do so, USBI violated the reasonable expectations of Plaintiffs and members of the Class.

128.    Plaintiffs and the Class suffered damages as a direct and proximate result of the foregoing breach of the implied covenant of good faith and fair dealing, and they are entitled to damages from USBI, plus prejudgment interest thereon.

**COUNT IV**
**Negligent Misrepresentations and Omissions**
**(Against USBI)**

129.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

31

130.    Plaintiffs bring this cause of action individually and on behalf of all Class members against USBI.

131.    USBI was Plaintiffs' agent in connection with the Bank Deposit Program and owed Plaintiffs a duty of care vis-a-vis the Bank Deposit Program.

132.    USBI, in its disclosures regarding the Bank Deposit Program, and with negligence, omitted material information and made material misrepresentations to its clients about the Bank Deposit Program as described above.

133.    USBI's material misrepresentations and omissions concerned critical details of the Bank Deposit Program as described above.

134.    Plaintiffs and the Class justifiably relied on USBI's representations and omissions regarding the Bank Deposit Program and accordingly maintained cash balances in the Program to their detriment.

135.    The disparity in experience negotiating interest rates between Plaintiffs and the Class, on one hand, and USBI on the other, as well as USBI's duties, obligations, and express representations that it would act in customer's best interests without placing its own interests ahead of its customers' made Plaintiffs' and the Class's reliance on these statements justifiable.

136.    USBI's negligent misrepresentations and omissions directly and proximately caused harm to Plaintiffs and the Class.

137.    Plaintiffs and the Class seek all damages permitted by law.

### COUNT V
### Violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69
### (Against All Defendants)

138.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

139.    Plaintiffs bring this cause of action individually and on behalf of all Class members against all Defendants.

140.    Defendants' brokerage services and custodian services, including establishing, maintaining, and/or operating the Bank Deposit Program, constitute "merchandise" under MINN. STAT. § 325F.69.

141.    Plaintiffs purchased Defendants' brokerage and custodian services for personal, family, or household use.

142.    In connection with establishing, maintaining, and/or operating the Bank Deposit Program, Defendants acted, used, or employed fraud, unfair or unconscionable practices, false pretenses, false promises, misrepresentations, misleading statements, or deceptive practices with the intent that others rely thereon.

143.    Defendants' unlawful practices include designing, structuring, and/or operating the Bank Deposit Program to benefit themselves at the expense of their customers, making material misrepresentations and omissions regarding the Program, and breaching fiduciary and other duties by the conduct described herein.

144.    As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiffs and the Class suffered harm and seek damages in an amount to be determined at trial, costs of investigation, and reasonable attorneys' fees, and all other equitable relief deemed just and proper.

**COUNT VI**
**Violation of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44**
**(Against All Defendants)**

145.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

146.    Plaintiffs bring this cause of action individually and on behalf of all Class members against all Defendants.

147.    By designing, structuring, and/or operating the Bank Deposit Program to benefit themselves at the expense of their customers, making material misrepresentations and omissions regarding the Program, and breaching fiduciary duties by the conduct described herein, Defendants engaged in unfair or unconscionable acts or practices and created a likelihood of confusion or misunderstanding.

148.    As a direct and proximate consequence of Defendants' conduct as alleged herein, Plaintiffs and the Class have suffered harm and seek injunctive relief and attorneys' fees.

**COUNT VII**
**Unjust Enrichment**
**(Against All Defendants)**

149.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

150.    Plaintiffs bring this cause of action individually and on behalf of all Class members against all Defendants.

151.    As a result of Defendants' wrongful conduct, Plaintiffs and the Class received unfair and unreasonably low interest payments on their cash sweep deposits.

152.    As a result of Defendants' wrongful conduct, Defendants were unjustly enriched because, among other benefits, they received significantly greater net interest income than they would have but for their wrongful conduct.

153.    Defendants appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the Class.

154.    It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

155.    Defendants' retention of these unjustly obtained benefits would violate the fundamental principles of justice, equity, and good conscience.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class, and award the following relief:

a.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class, and Plaintiffs' counsel as counsel for the Class;

b.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

c.    Appropriate injunctive and equitable relief;

d.    A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

e.    An order awarding costs, restitution, disgorgement,  statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, and out-of-pocket costs in an amount to be determined at trial;

f.    An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

g.    An award of costs, expenses, and attorneys' fees as permitted by law; and

h.    Such other or further relief as the Court may deem appropriate, just, and equitable.

## VIII.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

and all issues in this action so triable of right.


DATED: April 15, 2025                         Respectfully submitted,

                                              */s/Daniel E. Gustafson*
                                              **GUSTAFSON GLUEK, PLLC**
                                              Daniel E. Gustafson (#0202241)
                                              dgustafson@gustafsongluek.com
                                              Catherine Sung-Yun Smith (#0353723)
                                              csmith@gustafsongluek.com
                                              Shashi K. Gowda (#0401809)
                                              sgowda@gustafsongluek.com
                                              Canadian Pacific Plaza
                                              120 South 6th Street, Suite 2600
                                              Minneapolis, MN 55402
                                              Tel.: (612) 333-8844

                                              -and–

                                              **KESSLER TOPAZ**
                                              **MELTZER & CHECK, LLP**
                                              Joseph H. Meltzer (*pro hac vice* forthcoming)
                                              jmeltzer@ktmc.com
                                              Melissa L. Yeates (*pro hac vice* forthcoming)
                                              myeates@ktmc.com
                                              Tyler S. Graden (*pro hac vice* forthcoming)
                                              tgraden@ktmc.com
                                              280 King of Prussia Road
                                              Radnor, PA 19087
                                              Telephone: (610) 667-7706
                                              Facsimile: (610) 667-7056

                                              -and–

                                              **CARELLA, BYRNE, CECCHI,**
                                              **OLSTEIN, BRODY & AGNELLO, P.C.**
                                              James E. Cecchi (*pro hac vice* forthcoming)
                                              jcecchi@carellabyrne.com
                                              Michael A. Innes (*pro hac vice* forthcoming)
                                              minnes@carellabyrne.com
                                              Kevin G. Cooper (*pro hac vice* forthcoming)

kcooper@carellabyrne.com
Grant Y. Lee (*pro hac vice* forthcoming)
glee@carellabyrne.com
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973)-994-1700
Facsimile: (973)-994-1744

-and-

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
Zachary Jacobs (*pro hac vice* forthcoming)
zjacobs@carellabyrne.com
222 S Riverside Plaza
Chicago, Illinois 06606

-and-

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.**
Jason H. Alperstein (*pro hac vice* forthcoming)
jalperstein@carellabyrne.com
2222 Ponce De Leon Blvd.
Miami, Florida 33134

***Counsel for Plaintiffs and the Proposed Class***